```
                        UNITED STATES DISTRICT COURT
                        MIDDLE DISTRICT OF TENNESSEE
                             NASHVILLE DIVISION

LEAF FUNDING, INC.,                 )
                                    )
      Plaintiff,                    )
                                    )
v.                                  )   Case No. 3:06-CV-00938
                                    )   Judge Echols
EMANUELE BUTERA d/b/a               )
WHATSINUSA.COM LLC, d/b/a           )
B-FLATS DUELING PIANO BAR OF        )
COOL SPRINGS, LLC, d/b/a            )
AMERICAN CLUB SYSTEMS, INC.         )
d/b/a FITNESS EXPRESS MGT           )
OF NASHVILLE LLC, d/b/a             )
FITNESS EXPRESS - MGT               )
CORPORATION, d/b/a WORLD GYM,       )
 d/b/a BAHAMA MAMMAS OF             )
COOL SPRINGS, LLC                   )
JENNIFER BUTERA,                    )
DIRK W. PARKINSON,                  )
BRIAN K. BALL,                      )
TOTAL FITNESS SYSTEMS, LLC,         )
FITNESS EXPRESS LLC,                )
of MOUNT JULIET d/b/a               )
WORLD GYM of MOUNT JULIET,          )
FITNESS EXPRESS LLC of              )
SPRING HILL, d/b/a WORLD GYM        )
of SPRING HILL,                     )
FITNESS EXPRESS of SMYRNA           )
CORPORATION                         )
d/b/a WORLD GYM OF SMYRNA,          )
FITNESS EXPRESS LLC                 )
of GALLATIN d/b/a WORLD GYM         )
OF GALLATIN,                        )
FITNESS EXPRESS, LLC                )
d/b/a WORLD GYM OF                  )
COOL SPRINGS,                       )
FITNESS EXPRESS OF                  )
CHATTANOOGA LLC, d/b/a              )
WORLD GYM OF CHATTANOOGA I,         )
BAHAMA MAMMAS OF SPRING HILL,       )
LLC, FITNESS EXPRESS OF             )
JENKINS RD, LLC, d/b/a WORLD        )
GYM CHATTANOOGA II, LEAR            )
FITNESS LLC, and                    )
FITNESS EXPRESS                     )
OF CLARKSVILLE, LLC,                )
                                    )
      Defendants.                   )
```

**MEMORANDUM**

Pending before the Court is the Motion for a Temporary Restraining Order and Preliminary Injunction filed by Leaf Funding, Inc. ("Leaf Funding") (Docket Entry No. 2). As a part of its request for extraordinary relief, Plaintiff seeks a Writ of Possession and a Pre-Judgment Attachment of certain bank accounts of certain Defendants.

On October 3, 2006, the Court held a hearing on Plaintiff's Motion. At the hearing, counsel for the Plaintiff appeared as did counsel for numerous Defendants. No evidence was presented at the hearing.

## I. FACTS

The facts are untried and are based upon the Complaint filed by the Plaintiff (Docket Entry No. 1) which has been verified by the Vice President of Leaf Funding. (Docket Entry No. 2). Since no contrary evidence has been presented to the Court, the Court accepts as true the factual allegations set forth in the Complaint.

On April 14, 2005, Defendants Total Fitness Systems LLC, Emanuele Butera, Jennifer Butera, Dirk Parkinson, Brian Ball, World Gym Express of Mount Juliet LLC (also known as Fitness Express LLC, of Mount Juliet), World Gym Express of Spring Hill, LLC (also known as Fitness Express, LLC of Spring Hill), World Gym of Smyrna (also known as Fitness Express, LLC of Smyrna), World Gym of Gallatin (also known as Fitness Express, LLC of Gallatin) and World Gym of Cool Springs LLC (also known as Fitness Express LLC) ("Lessees") entered into a Master Lease Agreement ("Master Lease") with Leaf Funding for

2

the purpose of establishing the terms and conditions under which Lessees could lease equipment from Leaf Funding. The equipment at issue is physical fitness equipment and includes such things as weight machines, treadmills, and tanning beds.

Under the terms of the Master Lease, the Lessees are to make specified payment for the equipment covered by the lease with the leased equipment remaining the property of Leaf Funding. Pursuant to Paragraph 7 of the Master Lease, Lessees are prohibited from assigning the Master Lease and are prohibited from subletting or lending the equipment without the prior consent of Leaf Funding.

On May 19, 2005, the Lessees executed a Co-Lessee Addendum to the Master Lease ("Addendum"). Paragraph 1.1 of the Addendum provides that each co-Lessee agrees to be jointly and severally responsible for fulfilling all obligation under the Addendum and Master Lease. Between May 25, 2005 and February 20, 2006, Lessees also entered into Master Lease Schedules Nos. 1 through 24 which identify the equipment and incorporate the terms of the Master Lease.

The Complaint in this action alleges numerous material breaches of the Master Lease and Addendum. These breaches include the failure to make payments, the failure to provide proof of insurance, and the improper transfer or disposition of a lot of the equipment covered by the Master Lease, Addendum and schedules.

Since July 31, 2006, the Lessees have not made payments on the equipment as required by the Master Lease and are $183,471.12 in arrears. Under Paragraph 12 of the Master Lease, unless cured within ten day, the Lessees' failure to make a payment constitutes default.

The Lessees have also failed to provide proof of insurance on the equipment. The failure to provide proof of insurance is a breach of paragraphs 10 and 12(b) of the Master Lease.

Apart from the failure to make lease payments and provide proof of insurance, Leaf Funding alleges that the Lessees have sold certain equipment and moved other equipment without its permission. Specifically, Leaf Funding alleges that the Lessees sold leased equipment from five locations in Atlanta, Georgia to Champion Fitness, LLC. They also transferred a large amount of leased equipment to warehouses in Leaminton, Ontario and Huntsville, Alabama. While Leaf Funding subsequently learned of the transfers, the transfers were made without prior notice to, or approval by, Leaf Funding. The selling or transferring of equipment is a violation of Paragraph 7 of the Master Lease.

Under Paragraph 6 of the Master Lease, Leaf Funding has a right to inspect its equipment. Leaf Funding has been thwarted in those efforts by being given false addresses for the location of the equipment. The equipment which Leaf Funding has been able to inventory shows that at least sixty percent of the leased equipment is unaccounted for.

Upon the occurrence of an event of default, Paragraph 13 of the Master Lease provides that the Lessor may declare the Lessees to be in default. Upon default, the Lessor is entitled (among other things) to: (1) declare the entire balance of the lease immediately due and payable and accelerate the balance due under any other lease

4

between Lessor and Lessees without notice or demand; (2) sue to recover all lease payments and other monies due;

(3) charge Lessees interest on all monies more than thirty days past due; (4) require the Lessees to assemble all equipment and license materials so that the Lessor can take possession; and/or (5) require Lessees to remove any physical obstruction to the removal of the equipment from the place where the equipment is located so that the Lessor can take possession.[1]

On September 1, 2006, Leaf Funding sent a notice of default to the Lessees declaring that the entire balances under the leases were accelerated and were due and payable immediately as provide in Paragraph 13 of the Master Lease. Leaf Funding asserts that the amount currently due from the leases totals at least $2,921,666.85.

## II. APPLICATION OF LAW

Plaintiff seeks a temporary restraining order and a preliminary injunction. As a part of its request, Plaintiff also seeks a Writ of Possession and pre-judgment attachments on certain bank accounts of the Defendants.

Upon full consideration of this matter, the Court finds that a temporary restraining order is required to prevent concealment, sub-lease, or transfer of the equipment covered by the Master Lease and to locate the missing equipment. The Court further finds that the issuance of such an order will maintain the status quo and adequately

---

[1] In the event the Lessor disposes of the equipment, the Lessor is required to give the Lessees credit for the amounts received from the sale of the equipment.

5

protect Plaintiff's rights pending a hearing on Plaintiff's request for a preliminary injunction, attachment, and a writ of possession.

### III.   TEMPORARY RESTRAINING ORDER

Under Federal Rule of Civil Procedure 65(b), the Court may grant a temporary restraining order if it clearly appears from specific facts shown by testimony, affidavits or a verified complaint that immediate and irreparable injury, loss or damage will result to the applicant. In deciding whether to grant a temporary restraining order, the Court must consider four factors: (1) whether the party seeking the order has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the order is not entered; (3) the potential harm the order would cause others; and (4) the public interest. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000).

**A.   Likelihood of Success**

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." Six Clinics Holding Corp., II v. CAFCOMP Systems, 119 F.3d 393, 407 (6th Cir. 1997). "However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberate investigation." Id.

In this case, Plaintiff has presented proof in the way of a verified Complaint which establishes that it has a likelihood of success on the merits. Plaintiff has presented numerous instances of breaches of the Master Lease and Addendum, including the Lessee's

6

failure to make payments as required; the Lessee's failure to maintain proof of insurance as required; the Lessee's improper transfer, sub-lease, or sale of equipment subject to the lease; proof of over $1,000,000.00 in missing equipment; and undisputed statements that bank accounts used to make lease payments had been closed. Under the Master Lease and Addendum, these matters constitute a material breach and allows the Lessor to seek specified remedies to protect its rights under the lease. This factor weighs heavily in favor of granting a temporary restraining order.

**B. Irreparable Harm**

At the hearing on Plaintiff's request for a temporary restraining order, Defendants asserted that Plaintiff cannot show irreparable harm because it can be fully compensated for any damages which it has, or may, suffer. The Court rejects that argument under the facts that have thusfar been presented in this case.

"'As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm.'" Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)(citation omitted). However, "[a]n injunction may issue to protect assets that are the subject of the dispute or to enjoin conduct that might be enjoined under a final order." In re Fredeman Litigation, 843 F.2d 821, 825 (5th Cir.1988). Hence, the possibility of dissipating assets so that funds or property no longer exist in order to compensate the Plaintiff can establish irreparable harm. See, In re Focus Media, Inc., 387 F.3d

1077, 1086 (9th Cir. 2004)(bankruptcy court properly entered preliminary injunction where evidence showed that assets were being dissipated by primary shareholder); FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir.1997) (giving "substantial deference" to lower court's finding that there was "at least a possibility" of dissipation of assets absent an asset-freezing injunction, and consequently concluding that the possibility of irreparable injury had been adequately demonstrated); Elliott v. Kiesewetter, 98 F.3d 47, 58 (3d Cir. 1996)("That irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order").

In this case, Plaintiff has raised the real possibility that the property subject to the Master Lease and Addendum may disappear, causing it irreparable harm. In fact, according to Plaintiff's proof, over $1,000,000.00 in equipment is missing. The allegations of improprieties are numerous and include Defendants' selling and/or transferring the property without the permission of the Lessor as required by the Master Lease and Addendum. Some of the property has been moved out of state and some even out of the country. In addition, some of the bank accounts used by Defendants and/or others to pay lease payments in the past have been closed. If Defendants move, transfer, or sell whatever equipment remains and have no money in the bank, Plaintiff may be thwarted in its efforts to recover under the Master Lease and Addendum because it may not be able to satisfy any money judgment it may obtain.

8

The Court finds that this factor too weighs in favor of the Plaintiff.

**C. Potential Harm to Others**

The third factor the Court must consider is whether the issuance of a temporary restraining order will cause "substantial harm to others." Leary, 228 F.3d at 736. "This requires a court to balance the harm a plaintiff would suffer if its request for a temporary restraining order was denied with the harm the defendants would suffer if they were to be enjoined." Sawyer, 2006 WL 1638537 at *8. "It also requires a court to assess the impact a preliminary injunction might have on relevant third parties." Id.

As already suggested in the discussion on irreparable harm, the Court finds that Plaintiff would be harmed if a temporary restraining order is not issued because Defendants have taken actions which are wholly inconsistent with their obligations under the Master Lease and Addendum, including transferring and selling equipment which is not theirs to transfer or sell. Conversely, the Court perceives no harm to the Defendants who are signatories to the Master Lease and Addendum because the temporary restraining order will merely prohibit them from violating the Master Lease, provide Plaintiff information about the equipment which has been moved, transferred, or sold, and will maintain the status quo for a short time until the preliminary injunction hearing is held.

As for harm to others, the Court can discern no harm to the public generally. The Court does note, however, that several of the Defendants have been sued as "alter-egos" of other Defendants who are

9

signatories to the Master Lease and Addendum. In its filings, Plaintiff asserts that Fitness Express of Smyrna Corp., Fitness Express of Chattanooga LLC and World Gym of Chattanooga are the alter-egos of the original Lessees under the master lease because they allegedly have made payments on behalf of the Lessess, they have co-mingled funds with the Lessees, and they have used some of the equipment originally leased to the Lessees at their locations.

Whether they are alter-egos of the Lessees or not, the Court perceives no harm to these Defendants because they have no right to possess the equipment under the Master Lease without the consent of the Plaintiff. In any event, the temporary restraining order to be issued will merely keep the property in place until the Court can have a hearing on the preliminary injunction, writ of possession, and attachment. Therefore, the issuance of a restraining order should pose no problems for the "alter ego" Defendants.

**D. Public Interest**

The last factor in determining whether to grant a temporary restraining order "asks whether the public interest is advanced in issuing" the order. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 372 F.3d 712, 720 n. 4 (6th Cir. 2003). Under Tennessee law, "parties are free to contract as they see fit" and courts are to "defer to the contracting process by enforcing contracts according to their plain terms." Seraphine v. Aqua Bath Co., Inc., 2003 WL 1610871 at *9 (Tenn. Ct. App. 2003). The public have an interest in protecting and preserving the integrity of contracts in Tennessee. Issuance of a temporary restraining order

10

which seeks to enforce rights under a written contract will serve the public's interest.

**E. Scope of the Restraining Order**

Based upon the foregoing, the Court finds that the four factors to be considered in ruling on a request for a temporary restraining order are all in Plaintiff's favor. "The purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of the dispute may be had." Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 226 (6th Cir. 1996).

To preserve the status quo in this case, the Court will issue a Temporary Restraining Order which prohibits the Defendants and those acting in concert with them from concealing, moving, transferring or otherwise alienating or impairing, damaging, or concealing the equipment which is the subject of the Master Lease and Addendum between the Defendants and Leaf Funding. In addition, the Temporary Restraining Order will require Defendants to provide certain information about the transferred equipment, including the locations where it is being used or stored.

Plaintiff's request for a Preliminary Injunction will be set for a hearing. At that hearing, the Court will also consider Plaintiff's request for a Writ of Possession and its request for the attachment of certain bank accounts.

The Court is deferring ruling on Plaintiff's request for a Writ of Possession because the statutory provision upon which the request is made, T.C.A. § 29-30-106, generally requires five days notice to the Defendant which has not been provided in this case. While there

11

are certain exceptions to this requirement, such as for concealment of the property or removal from the court's jurisdiction, T.C.A. § 29-30-106(B)(ii), the Court finds that the Temporary Restraining Order being issued is adequate to maintain the status quo until a hearing on the preliminary injunction, writ of possession and attachment of bank accounts.

**F.  Security**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "While . . . the language of Rule 65(c) appears to be mandatory, and . . . many circuits have so interpreted it, the rule in [the Sixth Circuit] has long been that the district court possesses discretion over whether to require the posting of security."  <u>Moltan Co. v. Eagle-Picher Indus. Inc.</u>, 55 F.3d 1171, 1176 (6th Cir. 1995).

In this case, the Court exercises its discretion by determining that security is appropriate to insure against any damages that Defendants may incur while they are temporarily enjoined.  The security to be provided by Plaintiff shall be in the amount of $400,000.00.  This amount is sufficient because Defendants are being restrained from moving, transferring, or concealing the equipment, and not from using the equipment where it is presently located.

12

## IV. CONCLUSION

On the basis of the foregoing, the Court will enter a temporary restraining order until a hearing can be held on Plaintiff's request for a preliminary injunction. That Order will prohibit Defendants and those acting in concert with them from concealing, moving, transferring or otherwise alienating or impairing, damaging, or concealing the equipment which is the subject of the Master Lease, Addendum and schedules between the Defendants and Leaf Funding, and require Defendants to provide information to Plaintiff about the equipment moved, transferred, sold, or leased and explain the difference between the amount of equipment originally leased to Defendants and the amount of equipment which Defendants claim they now have in their possession.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

13